IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STERLING CAPONE                                           PLAINTIFF

V.                      CASE NO. 5:15-CV-5219

UNIVERSITY OF ARKANSAS, and the
Board of Trustees of the University of
Arkansas as a Public Body Corporate;
UNIVERSITY OF ARKANSAS, a Political
Subdivision of the State of Arkansas;
UNIVERSITY OF ARKANSAS, Operating
and D/B/A/ RAZORBACK TRANSIT; and
JANE DOE & JOHN DOE                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Plaintiff Sterling Capone's Motion for Leave to File Amended Complaint (Doc. 19) and Memorandum in Support (Doc. 20), as well as Defendants University of Arkansas and the Board of Trustees' (collectively, "the University") Objection (Doc. 23) and Brief in Support (Doc. 24). Also before the Court are the University's Motion to Dismiss (Doc. 6) and Brief in Support (Doc. 7), Ms. Capone's Response (Doc. 10), the University's Reply (Doc. 11), Ms. Capone's Supplemental Response (Doc. 15), the University's Response to her Supplemental Response (Doc. 16), and a final Response (Doc. 21) submitted by Ms. Capone after her attorney entered his appearance. For the reasons given below, Ms. Capone's Motion is **GRANTED IN PART AND DENIED IN PART**, and the University's Motion is **MOOT**.

### I. BACKGROUND

Ms. Capone alleges that she was employed by the University as a bus driver from around March 2014 until around November 22, 2014, and that during her

employment she was subjected to sexual harassment and discrimination by various supervisors. She further alleges that on numerous occasions she informed her supervisors of workplace practices that she believed to be unsafe or unlawful, and that her supervisors ignored and sometimes explicitly overrode her requests that such practices be stopped or corrected. Ms. Capone asserts that she complained to the University's human resources department of these and other related matters on November 21, 2014, and that she was fired in retaliation the very next day.

Around May 8, 2015, Ms. Capone submitted an intake questionnaire to the Equal Employment Opportunity Commission ("EEOC"), in order to initiate the process of filing formal charges with that agency against the University under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"). Around June 18, 2015, the EEOC concluded its investigation into Ms. Capone's claims and mailed her a letter informing her that it was unable to conclude that a violation of Title VII had occurred, and that she had ninety days within which to file a lawsuit under that statute in federal court, if she wished to do so. Ninety days later, Ms. Capone initiated this lawsuit *pro se*, filing her original Complaint (Doc. 1) in this Court and asserting three counts against the University: retaliation in violation of Title VII, sex discrimination in violation of Title VII, and retaliation in violation of the Arkansas Whistleblower Act, Ark. Code Ann. § 21-1-603 ("AWA").

On December 8, 2015, the University filed its Motion, arguing that Ms. Capone's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The parties filed various dueling briefs regarding this Motion

before counsel for Ms. Capone entered his appearance on March 15, 2016. Then, on April 6, 2016, Ms. Capone's attorney filed a supplemental Response in opposition to the University's Motion, along with a Motion for Leave to file an amended complaint which would assert two counts under Title VII, one count under Title IX of the Education Amendments of 1972 ("Title IX"), one count under the AWA, one count under the Arkansas Civil Rights Act ("ACRA"), and one count of negligence under Arkansas common law. A couple of weeks later, the University filed its Response in opposition to Ms. Capone's Motion, arguing that amendment of Ms. Capone's Complaint would be futile. Both motions are now fully briefed and ripe for decision.

## II. LEGAL STANDARD

When a defendant opposes granting leave to file an amended complaint on the grounds that amendment would be futile, the Court must determine whether the proposed amended complaint would survive a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). To survive such a motion, the proposed amended complaint must provide "a short and plain statement of the claim that [Plaintiffs are] entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of the proposed amended complaint's factual allegations as true, and construe them in the light most favorable to Ms. Capone, drawing all reasonable inferences in her favor. *See Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

However, the proposed amended complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, while "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

Generally, Rule 12(b)(6) motions must be decided on the face of the pleadings. Rule 12(d) states that if the Court considers "matters outside the pleadings" when ruling on a Rule 12(b)(6) motion, then "the motion must be treated as one for summary judgment" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." However, the Court "may consider . . . matters of public and administrative record referenced in the complaint" without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 990 (8th Cir. 2007). Although the parties have referenced various public and administrative filings with the EEOC, the Court has no need to consult such materials in order to resolve the instant issues, though the preceding "background" section of this Order contains some information gleaned therefrom, solely to provide some context for readers.

As for Rule 12(b)(1) motions, "the question may be resolved either on the face of the pleadings or upon factual determinations made in consideration of matters outside of the pleadings." *Bhd. of Maint. of Way Emps. Div. of Intern. Bhd. of Teamsters v. Union Pac. R.R. Co.*, 475 F. Supp. 2d 819, 834-35 (N.D. Iowa 2007) (citing *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn v. United States*, 918 F.2d 724, 729 & n.6 (8th Cir. 1990)). The Court will resolve the instant question of subject-matter jurisdiction on the face of the pleadings, and therefore for purposes of this issue accepts all factual allegations in Ms. Capone's proposed amended complaint as true, and draws all reasonable inferences in Ms. Capone's favor. *Id.*

### III. DISCUSSION

The Court begins by considering Ms. Capone's Motion for Leave to File Amended Complaint, which the University opposes on grounds of futility. Below, the Court addresses in turn the University's arguments as to Ms. Capone's proposed claims under Title VII, Title IX, and Arkansas law, respectively.

### A. Ms. Capone's proposed Title VII claims

The University contends that Ms. Capone failed to file a timely charge of discrimination with the EEOC, and that this fact deprives the Court of subject-matter jurisdiction over her Title VII claims. However, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Coons v. Mineta*, 410 F.3d 1036, 1040 (8th Cir. 2005) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Ms. Capone's Title VII claims may be subject to dismissal for failure to meet an administrative deadline, "but it is not

because jurisdiction is lacking." *Id.* This Court clearly has subject-matter jurisdiction over Ms. Capone's Title VII claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

It is equally clear that to the extent Ms. Capone's Title VII claims depend on her having filed timely charges of discrimination with the EEOC, her proposed amended complaint does not fail to state such claims—indeed, it quite literally alleges: "Plaintiff timely filed charges of Employment Discrimination before the US EEOC." (Doc. 20-1, ¶ 57). The University disputes this allegation, of course, but at this stage of proceedings the Court is required to accept the allegations in Ms. Capone's proposed amended complaint as true. *See Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 801 (8th Cir. 2011). Furthermore, Ms. Capone argues that the particular facts of her case make her eligible for the equitable tolling of her administrative filing deadline; and under Eighth Circuit precedent, she must be permitted the opportunity to develop those facts through discovery. *See id.* Ms. Capone may or may not ultimately prevail on these arguments at some later stage in this case, but the pleading stage is not the appropriate time to address them. The Court will permit Ms. Capone to file her proposed amended Title VII claims.

### B. Ms. Capone's proposed Title IX claim

Title IX prohibits sex discrimination by educational programs that receive federal funds. *See* 20 U.S.C. § 1681. However, as the University correctly observes, Title IX does not provide any explicit private right of action for employees of such institutions against their employers. The University argues further that the Court should not find any such *implicit* right of action, since such employees' rights are already well-protected

by the provisions of Title VII (which *does* provide a private right of action, under which Ms. Capone has already brought claims of sex discrimination, *see* Sections I & III.A, *supra*).

The Supreme Court has never directly addressed this issue, and only a few circuit courts of appeals have; the Eighth Circuit does not appear to be among them. In *Great American Federal Savings & Loan Association v. Novotny*, the Supreme Court held that a violation of Title VII's prohibition of sex-based employment discrimination could not give rise to a separate cause of action under 42 U.S.C. § 1985(3), which provides a right of action for persons who are injured by conspiracies to deprive them "of the equal protection of the laws, or of equal privileges and immunities under the laws." 442 U.S. 366, 378 (1979). Of central importance to the Supreme Court's holding in *Novotny* were the facts that "[u]nder Title VII, cases of alleged employment discrimination are subject to a detailed administrative and judicial process designed to provide an opportunity for nonjudicial and nonadversary resolution of claims," *id.* at 372–73, and that a claim brought under § 1985(3) "could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII," *id.* at 376.

In *Lakoski v. James*, the Fifth Circuit found *Novotny*'s reasoning to apply with equal force to Title IX, holding that it was "not persuaded that Congress offered Title IX to employees of federally funded educational institutions so as to provide a bypass to Title VII's administrative procedures." 66 F.3d 751, 758 (5th Cir. 1995). In reaching this conclusion, the *Lakoski* Court observed that "Congress enacted Title IX only months after extending Title VII to state and local governmental employees," and remarked

7

"[t]hat Congress intended to create a bypass of Title VII's administrative procedures so soon after its extension to state and local government employees is an extraordinary proposition." *Id.* at 756. This Court agrees with the Fifth Circuit's reasoning in *Lakoski*, and rules that Ms. Capone may not assert a private right of action under Title IX for sex-based employment discrimination that falls within the ambit of Title VII.

In so ruling, this Court acknowledges that the Fourth Circuit appears to have reached a different conclusion in *Preston v. Commonwealth of Virginia ex rel. New River Community College*, 31 F.3d 203, 205–06 (4th Cir. 1994). The *Preston* Court is obviously correct that in *Cannon v. University of Chicago*, 441 U.S. 677 (1979), the Supreme Court recognized an implied private right of action for enforcement of Title IX, but *Cannon* only dealt with a prospective *student's* right of action against an educational institution. Title VII, of course, does not offer students the same protections against discrimination that it offers employees, so *Cannon* need not be read as calling into doubt *Novotny*'s solicitousness for the integrity of Title VII's administrative procedures. This Court respectfully disagrees with the *Preston* Court's characterization of *North Haven Board of Education v. Bell*, 456 U.S. 512 (1982), as extending the *Cannon* private right of action "to employment discrimination on the basis of gender by educational institutions receiving federal funds." 31 F.3d at 206. *Bell* simply recognizes that sex-based employment discrimination violates Title IX, *see* 456 U.S. at 535–36, and that Title IX authorizes the Department of Education to promulgate regulations stripping federal funding from education programs that engage in such discriminatory employment practices, *see id.* at 540. This is a wholly separate question from whether Title IX implies a private right of action for victims of employment discrimination; indeed,

the phrases "private right" or "right of action" do not appear anywhere in the *Bell* opinion.

### C. Ms. Capone's proposed Arkansas-law claims

Finally, the Court turns to Ms. Capone's claims brought under Arkansas law. The University argues that the Eleventh Amendment to the United States Constitution bars this Court from adjudicating these claims[1], and this Court agrees. The Eleventh Amendment states that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State," and the Eighth Circuit acknowledges that "[t]he University of Arkansas has been recognized to have Eleventh Amendment immunity." *Okruhlik v. Univ. of Ark. ex rel. May*, 255 F.3d 615, 622 (8th Cir. 2001). For a state to waive Eleventh Amendment immunity and thereby subject itself to federal court jurisdiction, it "must make a clear, unequivocal statement that it wishes to do so." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 800 (8th Cir. 2002).

With regard to negligence and the ACRA, not only has the state of Arkansas not made a statement that it wishes to do so—it has made clear, unequivocal statements that it does *not* wish to do so. *See* Ark. Code Ann. § 21-9-301(a) ("It is declared to be the public policy of the State of Arkansas that all . . . political subdivisions of the state . . . shall be immune from [tort] liability and from suit for damages except to the extent that they may be covered by liability insurance."); *id.* at § 16-23-104 ("Nothing in [the ACRA]

---

[1] The University only makes this argument specifically with regard to Ms. Capone's AWA and ACRA claims, and appears not to have noticed that Ms. Capone also seeks to add a claim of negligence under state law. *See, e.g.*, Doc. 23, ¶ 3 ("Plaintiff also seeks to add *two* new claims . . . ." (emphasis added)). However, the University's Eleventh Amendment argument applies with equal force to the proposed negligence claim.

9

shall be construed to waive the sovereign immunity of the State of Arkansas."). As for the AWA, the only venue where it specifically authorizes suit to be brought against the state of Arkansas is "in the circuit court for the county where the alleged violation occurred, for the county where the complainant resides, or in the Pulaski County Circuit Court if the complaint is filed against an agency, department, or institution of state government." *Id.* at § 21-1-604(b); *cf. Smith v. Daniel*, 2014 Ark. 519, at *6 n.4, 452 S.W.3d 575 (2014) ("Obviously, in the case before us, a suit against Smith in his official capacity under the [AWA] in *state court* was not barred by the Eleventh Amendment . . . . Furthermore, it is obvious that the federal district court recognized, as do we, that [defendants] in their *official capacities* would have been proper defendants as public employers [in federal court] but for the state's immunity under the Eleventh Amendment." (emphasis in original)). Accordingly, the Eleventh Amendment bars Ms. Capone from asserting her proposed state-law claims in this Court.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff Sterling Capone's Motion for Leave to File Amended Complaint (Doc. 19) is **GRANTED IN PART AND DENIED IN PART** as follows: Ms. Capone may file her amended complaint **by no later than June 23, 2016**, asserting her proposed causes of action under Title VII; however, the amended complaint may not include any of her non-Title VII proposed causes of action.

**IT IS FURTHER ORDERED,** that the University of Arkansas and the Board of Trustees' Motion to Dismiss (Doc. 6) is **DENIED as MOOT**, because Ms. Capone's amended complaint will supersede her original Complaint in this matter.

**IT IS SO ORDERED** on this 20th day of June, 2016.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE